**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WILLIAM EDWARD FOSTER | * |
| | * |
| v. | *  Civil No. JKS-12-1957 |
| | * |
| CAROLYN W. COLVIN | * |
| Commissioner of Social Security | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff William Edward Foster brought this action pursuant to 42 U.S.C. § 405(g) for review of the Social Security Administration's (SSA) final decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. §§ 401 *et. seq.* (the Act). Both parties' motions for summary judgment are ready for resolution, *see* ECF Nos. 12 and 15, and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Foster's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

**1. Background.**

Foster filed applications for DIB and SSI on April 14, 2008, with an alleged disability onset date of December 11, 2007. R. 47-53, 324-30. The onset date was later amended to April 1, 2008. R. 46. His claims were denied initially on July 7, 2008, and upon reconsideration on December 5, 2008. R. 28, 29. Foster then filed a written request for a hearing before an Administrative Law Judge (ALJ), which concluded on February 22, 2010. R. 379. The ALJ, G.B. Arthur, issued a decision on March 16, 2010, finding that Foster could perform a limited range of light work and was therefore not disabled under the meaning of the Act. R. 25. The Appeals Council subsequently denied Foster's request for review on June 12, 2012, and the ALJ's decision became the final, reviewable decision of the agency. R. 6.

## 2. ALJ's Decision.

The ALJ evaluated Foster's disability claim using the five-step sequential process described in 20 C.F.R. § 404.1520.[1] At step one, the ALJ found that Foster had not engaged in any substantial gainful activity since the alleged onset date of April 1, 2008. R. 16. At step two, the ALJ identified Foster's severe medical impairments: degenerative joint disease in both knees and a possible adjustment disorder. R. 16. At step three, the ALJ found that Foster did not suffer from an impairment, or combination of impairments, listed in 20 C.F.R Part 404, Subpart P, Appendix 1. R. 17. At step four, the ALJ reviewed the record and determined that Foster possessed the Residual Functional Capacity (RFC) to perform light work with some additional limitations.[2] R. 17. The ALJ found Foster unable to perform any of his past relevant work. R. 23. At step five, given Foster's age, high school education, work experience, and RFC, the ALJ considered the testimony of the vocational expert (VE) and concluded that Foster is eligible for work that exists in significant numbers in the national economy. R. 25. Moreover, the ALJ could not identify a period of 12 consecutive months during which Foster suffered from disability. R. 21; 20 C.F.R. § 404.1509. Therefore, the ALJ denied Foster's applications for benefits.

## 3. Standard of Review.

The role of this court on review is to determine whether the ALJ applied the correct legal

---

[1] First, the ALJ determines if the claimant engaged in any substantial gainful activity since the alleged onset date. 20 C.F.R. § 404.1520(b). Second, the ALJ decides if the medical impairment is severe. 20 C.F.R. § 404.1520(c). Third, the ALJ must determine whether the impairment is listed in 20 C.F.R Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, based on the cumulative evidence available, the ALJ determines the claimant's residual functional capacity, 20 C.F.R. § 404.1520(e), and if it allows her to perform any past work. 20 C.F.R. § 404.1520(f). Finally, the ALJ must determine whether there is other work available for the claimant given the claimant's residual functional capacity. 20 C.F.R. § 404.1520(g).

[2] The ALJ found Foster's RFC to include: the ability to sit for six of eight hours, and stand or walk for four of eight hours, with the option to switch every half hour; an inability to climb ladders, ropes, or scaffolds, be exposed to hazardous heights or machines, lift or carry above the shoulder, kneel or crawl, or use push/pull leg controls; a need to avoid vibration, excessive dust, fumes, chemicals, poor ventilation, and humidity; an ability to climb stairs and ramps, balance, stoop, or crouch for only a third of the day; moderate limitations to completing a work day or week at a consistent pace; moderate pain and fatigue, and a moderate ability to work with peers and superiors. R. 17.

standards in finding Foster not disabled, and whether substantial evidence supports that conclusion. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted). To be substantial, there must be more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). This court may not try the case *de novo*, and will affirm a decision if it is supported by substantial evidence. *Id.* If conflicting evidence could cause reasonable minds to differ on whether or not the claimant is disabled, it is the ALJ's responsibility to make that determination. *Craig v. Chater*, 76 F.3d, 589 (4th Cir. 1996) (citing *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987)).

4. **Discussion.**

Foster has failed to establish a consecutive 12 month period during which he was disabled under the Act. "Under the SSA's regulations, 'disability' is defined as 'the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999) (quoting 20 C.F.R. § 404.1505(a)).

Multiple surgeries alone do not create a prolonged disability. *Schaffer v. Califano*, 433 F. Supp. 1218, 1223 (D. Md. 1977). If, between operations, the symptoms are "correctable so that the plaintiff could return to work," the disability does not persist, even if the underlying condition remains. *Id.*; *see also Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989) ("claimant's hospitalization and periods of recuperation represent distinct and separate periods of disability which cannot satisfy the statutory requirement of continuous disability"). Here, Foster underwent two surgeries after the alleged onset date. R. 20-21. After

3

the surgery in August 2008, the follow-up records report that it was healing nicely. R. 242. In October a State Agency assessment indicated that his described limitations were credible but expected to improve. R. 240. Dr. Trent's physical exam in October reported no drainage, cellulitis, or instability, and full knee extension. R. 318. A follow-up in November reported a good range of motion and only mild effusion with intermittent pain and swelling. R. 317. While further complaints of pain led to his final surgery in October 2009, by November he was able to participate in physical therapy, including 8 minutes of cycling, until he elected to stop attending. R. 21, 285-87. In short, substantial evidence supports the ALJ's conclusion that Foster did not endure a continuous, 12-month period during which he could not engage in a substantial gainful activity. Nonetheless, the court will address Foster's arguments as outlined in his brief.

Foster disagrees with the ALJ's decision in three respects. He argues that (1) the ALJ did not assign appropriate weight to the relevant medical opinions; (2) the ALJ improperly disregarded Foster's own testimony of pain and disability; and (3) the vocational evidence that the ALJ relied upon did not properly account for all of Foster's limitations. ECF No. 12-1 at 1-2.

**A. The ALJ's consideration of medical opinions in determining Foster's RFC.**

Foster claims that the ALJ failed to give proper weight to the opinions of his treating physician, Dr. Peter S. Trent, M.D. ECF No. 12-1 at 17. Specifically, he contends that the ALJ was not justified in according "limited weight" to Dr. Trent while according "some evidentiary weight" to the medical exam performed by Dr. Khan and the State Agency assessments. *Id.* at 17-20. A treating physician's opinion is generally entitled to greater weight, but only if it is both well-supported by medically acceptable diagnostic techniques and consistent with the other substantial evidence in the record. 20 CFR § 404.1527(d)(2); *Craig*, 76 F.3d at 590. If the opinion of the treating physician goes against the substantial evidence, or is not supported by the evidence, "it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In such cases, the proper weight is assigned based on a series of factors: (1) the length of treatment and

frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidentiary support; (4) consistency; (5) specialization; and (6) any other factors "which tend to support or contradict the opinion." 20 C.F.R. § 416.927(c). The ALJ must "give good reasons" when explaining the weight given to the treating professional's opinion. 20 C.F.R. § 404.1527(d)(2); *see also Melvin v. Astrue*, 602 F. Supp. 2d 694, 698 (E.D.N.C. 2009).

Foster claims that the ALJ engaged in "selective reasoning" rather than considering the record as a whole. ECF No. 12-1 at 17. However, the ALJ extensively enumerated all of Foster's reports, assessments, and treatments, both positive and negative. R. 19-21. First, the ALJ considered Foster's function reports. R. 18. He detailed the statements Foster made concerning his daily activities before the alleged onset date, and the changes in his ability to sit, stand, walk, lift, carry, and complete daily chores and hobbies since the alleged disability onset. R. 18-19. Second, the ALJ considered the medical record. R. 19. He chronologically listed all significant medical notes from Dr. Trent, Dr. Khan, the State Agency medical consultant, a second State Agency medical examiner, and the hospital emergency room, as well as notes from treatments, surgeries, and follow-up visits. R. 19-21. Significantly, both Drs. Trent and Khan repeatedly found that Foster had a good range of motion, and a note to that effect was found in the majority of the medical records. R. 19-21. Additionally, there was a consistent lack of instability and only occasional tenderness. R. 20-21.

Foster's argument that the ALJ erred in finding Dr. Trent's opinions inconsistent with the record is also unpersuasive. Dr. Trent's conclusory statements concerning Foster's inability to engage in "regular employment" are not controlling; determining whether a claimant is disabled and unable to work is rather committed to the discretion of the ALJ. 20 C.F.R. § 416.927(d); *see also Thompson v. Astrue*, 442 F. App'x. 804, 808 (4th Cir. 2011) (holding that a medical professional's opinions on an issue reserved to the Commissioner "are not afforded any special significance"). For example, Dr. Trent's opinion that Foster was not fit for work in August 2008,

5

even though he was engaging in volunteer work, was not binding on the ALJ. R. 20, 305. Moreover, the portions of the record Foster identifies as consistent with Dr. Trent's findings—i.e. multiple surgeries, a recommendation for physical therapy, and medicinal injections—all fail to provide evidence of a disability. Following his fourth and final surgery, medicinal injections allowed Foster to participate in physical therapy, where his stated goal was to be able to run and change direction, R. 289, but he was discharged because of his absenteeism. Additionally, Dr. Trent's opinion of Foster's limitations is inconsistent with those of Dr. Khan and both State Agency physicians. R. 21-22. The ALJ properly limited the weight assigned to Dr. Trent's opinions.

Foster also contends that too much weight was given to the State Agency assessments and Dr. Khan's examination. ECF No. 12-1 at 20. While it is not always appropriate to value opinions that contradict the treating physician, under these circumstances it was well justified. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (holding that the ALJ may give less weight to a treating physician "if there is persuasive contrary evidence" such as a contrary medical evaluation); *Spence v. Astrue*, No. 08-0851, 2009 WL 3162060, at *5 (D. Md. Sept. 30, 2009) ("a treating physician's opinion should be given significantly less weight if it is inconsistent with substantial evidence"). The ALJ gave weight to the opinions that lacked the inconsistencies in Dr. Trent's opinions and were corroborated by the evidence. R. 21. Foster claims that Dr. Trent is the only examining physician to offer an opinion, but in fact Dr. Rashid M. Khan, M.D. reviewed Foster's records and examined him on June 30, 2008. R. 20, 225-30. Dr. Khan expressed some limitation in Foster's ability to stand, walk, climb stairs, or carry heavy objects for prolonged periods of time, and all of these limitations were accepted by the ALJ. R. 228. Dr. Khan also noted that Foster had a normal range of motion, a normal gait, no instability, no tenderness to palpation, and no need for an assisting device. R. 227-28. The two State Agency assessments further detailed Foster's specific limitations, and were consistent with each other

6

and Dr. Khan's examination. R. 20. The first State medical consultant reported that Foster could sit and stand/walk for up to six hours each; frequently lift 10 pounds, balance, and stoop; occasionally lift 20 pounds, climb ramps and stairs, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. R. 218-19. The second State examiner drew similar conclusions months later, following Foster's third surgery, but found even less limitation, opining Foster could frequently rather than occasionally crouch. R. 237. These opinions support the ALJ's conclusion that Foster is capable of performing limited light work. R. 20-21.

Finally, Foster contends that in discounting Dr. Trent's opinion the ALJ was required to conduct a more thorough analysis of the relevant factors found in 20 C.F.R. § 404.1527(d)(2). However, there is no requirement to analyze opinions factor-by-factor so long as the ALJ applied the proper legal standard substantively. *Burroughs v. Astrue*, 487 F. Supp.2d 1258, 1265 (D. Kan. 2007); *Carter v. Astrue*, CIV.A. CBD-10-1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011) (holding that the ALJ's overall explanation of the weight given to a physician's opinion is more important than a rigid application of the factors). The ALJ clearly stated the reasoning behind his denial of controlling weight for Dr. Trent, namely, inconsistencies between the medical evidence and his conclusions. Dr. Trent claims that even with frequent breaks Foster would be unable to work for eight hours under any combination of sitting and standing/walking, and that he would miss at least three days of work a month. R. 213-16. This is directly contrary to the more moderate limitations given by Dr. Khan and the State Agency assessments discussed above.

In sum, the ALJ adopted limitations which took into account both Dr. Trent's opinion *and* the other medical assessments.[3] R. 20-22. He also gave deferential benefit to Foster, as is

---

[3] The State Agency assessments opined that each work day Foster could sit for six hours and stand/walk for six hours. R. 20. Dr. Trent opined that Foster was able to sit for two hours but stand/walk for less than two hours a day. R. 215. The ALJ held that in an eight hour work day Foster could sit for six hours and stand/walk for four hours, but must have the option to alternate every half hour. R. 17.

proper in determining the RFC. R. 21; *Dorsey v. Bowen*, 828 F.2d 246, 248 (4th Cir. 1987) ("The Social Security Act is a remedial statute, to be broadly construed and liberally applied in favor of beneficiaries."). The ALJ substantively applied the proper rules and factors for assigning each opinion specific weight and the stated explanations are adequate because they allow for effective judicial review. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (stressing the importance of referring to evidence to allow for judicial review).

### B. The ALJ's consideration of Foster's credibility.

Foster contends that the ALJ improperly discounted his personal testimony of pain and limitations. The ALJ found Foster limited to sitting for six hours a day and standing or walking for four hours a day, with an option to alternate every half hour. R. 17. Foster, however, complained of "chronic severe pain and swelling" when performing physical activity. ECF No. 12-1 at 22. In addition, he claimed that his ability to climb stairs is limited and that his pain medication to deal with these symptoms makes him drowsy. *Id.*

If the available evidence contradicts claims of disabling pain, the ALJ need not, and should not, accept them as true. *Bostic v. Astrue*, 474 F. App'x 952, 954 (4th Cir. 2012) (affirming the ALJ's rejection of claimant's subjective opinion of her own limitations because the evidence was not conclusively supportive). But when rejecting or assigning limited weight to subjective opinions, the ALJ must articulate the reasoning behind the credibility determination. *See Spence*, 2009 WL 3162060, at *4. There is a two-part test to guide the assessment of statements of pain: (1) the ALJ must identify objective evidence showing a medical impairment that could reasonably produce the pain alleged; and (2) based on the record the ALJ must determine the intensity and persistence of the pain. *Craig*, 76 F.3d at 594-96. In addressing the second prong, the ALJ may consider factors such as daily activity, the location and frequency of the alleged pain, and medication or other treatment. 20 C.F.R. § 404.1529(c)(3). The first prong is not at issue; the ALJ found that Foster suffers from medical

8

impairments that could cause pain. The intensity of the pain and the subsequent effects on Foster's abilities is what the ALJ ultimately found to be unpersuasive.

The ALJ properly identified evidence in the record that established Foster's ability to perform many daily functions without significant limitation. Foster performed volunteer work, visited his grandmother, attended church, took a fishing trip and a family road trip, performed household chores, prepared meals, occasionally went shopping, and drove a vehicle. R. 19, 22-23; *Bostic*, 474 F. App'x at 954 (rejecting subjective claims of disabling pain because evidence showed the claimant capable of routine daily function such as driving, attending church, caring for a child, visiting family, and light shopping). Even so, the ALJ did not make a finding "directly contrary" to the complaints of pain, as Foster alleges. ECF No. 12-1 at 22. Foster's opinion of his condition is reflected in many of Dr. Trent's notes and conclusions, which were assigned some limited weight.[4] R. 21. Foster further contends that he "still has significant work related limitations that are caused by his ongoing anxiety and depression" which compel him to attend therapy. ECF No. 12-1 at 5. However, he alleges no specific error with the ALJ's decision concerning his social or emotional issues, and offers no specific evidence to support this contention.

Foster next argues that the ALJ was not specific enough in his description of the RFC, particularly in the ability to lift and carry. ECF No. 12-1 at 25. The ALJ found that Foster was capable of performing light work. The Commissioner's brief correctly noted that the definition of light work specifically requires the ability to lift or carry up to only 10 pounds frequently, and never more than 20 pounds. ECF No. 15-1 at 20-21; *see also* 20 C.F.R. § 404.1567. Foster testified that he could lift and carry his 25 pound daughter. R. 350. Even Dr. Trent, who opined

---

[4] The ALJ also gave Foster some benefit in the RFC determination, in the areas of both physical and mental health. R. 21-22. The inclusion of moderate mental limitations accounts for possible irritability or fatigue, and addresses the alleged side effects of Foster's pain medication, though the ALJ found they were not conclusively supported by evidence. R. 22.

9

the greatest limitations on Foster's abilities, found he was able to lift and carry 10 pounds occasionally. R. 215. There was no evidence that required the ALJ to include a more restrictive limitation of Foster's ability to lift and carry than is outlined in the definition of light work.

Lastly, Foster argues that the ALJ failed to properly consider his unsuccessful attempts to work following his first two surgeries. ECF No. 12-1 at 2, 23. Specifically, Foster was fired from his job as a truck driver two years before the alleged onset date, and then attempted to work with a heating and air conditioning company but was fired again, also before the alleged onset date. ECF No. 12-1 at 2. Those terminations carry no weight because both jobs required at least a medium level of work. R. 370. Foster's inability to maintain those positions is not indicative of an inability to perform light or sedentary work, especially because they both occurred well before the alleged onset date.

In sum, the ALJ was justified in finding Foster's subjective opinions less than fully persuasive because the record as a whole contradicts his claims and diminishes his credibility. The ALJ properly assessed Foster's statements concerning the extent and severity of his symptoms.

### C. The hypothetical questions to the VE.

Foster objects to the hypothetical questions proposed to the VE because the ALJ: (1) included limitations not alleged by Foster himself; (2) did not properly account for the use of a cane; and (3) did not rely on the proper hypotheticals in forming an opinion. ECF No. 12-1 at 26-27.

The first complaint, that the ALJ included limitations that Foster did not allege, is of no moment. Foster fails to explain how these additional limitations create anything but harmless error, if in fact there was any error at all.

The second complaint, that the ALJ ignored Foster's alleged need to sometimes use a cane, is also misplaced. The only evidence Foster points to is sparse testimony that he had been

seen using a cane during one psychological exam and when walking into his hearing before the ALJ. ECF No. 12-1 at 27; R. 244, 361. The ALJ did take Foster's demeanor in the hearing room into account, and assigned it slight weight.[5] Additionally, there was a hypothetical put before the VE specifically contemplating "the use of a cane to assist in walking due to his knee pain," with a response that the pool of available light jobs would be reduced by 20%, and the pool of sedentary jobs would remain unchanged. R. 24-25. Therefore, the ALJ more than adequately accounted for the possible use of a cane.

Finally, Foster argues that the ALJ should have accepted Dr. Trent's opinion that Foster would (1) need to sit or stand at will, reducing available light jobs by 50 percent; and (2) experience a reduction in productivity, have three absences a month, and need to keep his foot elevated for three hours a day, completely precluding him from working. ECF No. 12-1 at 27. However, as previously noted, Dr. Trent's opinions were properly afforded only limited weight. The ALJ need only present hypotheticals that are based on substantial evidence, and is given significant discretion to decide which questions are appropriate. *Koonce v. Apfel,* No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan.11, 1999) ("The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question."). Based on the answers to the hypotheticals supported by the record, the Commissioner met her burden to show that Foster can perform various jobs that exist in significant numbers in the national economy.[6]

---

[5] The ALJ stated:

> [A]fter carefully observing the claimant at the hearing, the undersigned further notes that his verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations. While these observations are just one of many factors that the undersigned has considered, he was able to adequately enter and exit the hearing room, and to answer questions quite clearly over the course of the hearing, despite his alleged severe knee pain and disabling mental limitations. Some slight weight has been given [to] the claimant's hearing presentation. R. 22-23.

[6] Given the findings in the RFC, the VE testified Foster would be capable of jobs at the light level (office helper, router, and small product assembly) and the sedentary level (document preparer, addresser, and final assembler), all

11

**5. Conclusion.**

Substantial evidence supports the ALJ's conclusion that Foster was not disabled for a continuous 12 month period and that he can perform low-stress, unskilled, light work. Foster's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

Date: July 5, 2013 　　　　　　　　　　　　　　　　　　　　　　　/S/　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JILLYN K. SCHULZE
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

available in substantial quantities. R. 24. If standing and walking was limited to two hours instead of four, light jobs would decrease by 20%. R. 24. If there was a need to alternate between sitting and standing/walking at will instead of every half hour, light jobs available would be reduced by 50%. R. 24. Lastly, if there was also a need to use a cane while walking, light jobs available would be reduced by 20%, but the sedentary job base would remain the same. R. 24.